IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

|   |   |   |
|---|---|---|
| WALKER WINSLOW GROUP, LLC d/b/a PARADIGM HEALTH PLANS, | ) ) ) ) | |
| Plaintiff, | ) | Civil Action No. |
| v. | ) ) | |
| ROSS KRASNOW, ECE SPECIALISTS, LLC, MBL BENEFITS CONSULTING CORP. and ALLIED BENEFIT SYSTEMS, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

_____

## VERIFIED COMPLAINT

Plaintiff Walker Winslow Group, LLC d/b/a Paradigm Health Plans ("Paradigm"), by and through its attorneys, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., alleges the following claims and causes of action against Defendants Ross Krasnow ("Krasnow"), ECE Specialists, LLC ("ECE"), MBL Benefits Consulting Corp. ("MBL") and Allied Benefit Systems, Inc. ("Allied") (and together with Krasnow, ECE and MBL, the "Defendants"):

## NATURE OF THE ACTION

1.     This is an action to enforce post-employment restrictive covenants contained in Krasnow's employment agreement and to assert, *inter alia*, various state law claims for breach of contract, misappropriation of trade secrets and proprietary and/or confidential information, tortious interference with contract, tortious interference with prospective economic advantage, breach of the duty of loyalty and unjust enrichment.

2.     This case arises out of Krasnow's activities during the course of and following the termination of his employment with Paradigm.  Throughout his seven months of employment at Paradigm, Krasnow worked on behalf of and in conjunction with MBL, an insurance broker and

benefits consulting group, and his own brokerage entities to sell insurance products that compete with Paradigm's suite of products, including Allied's products, in breach of his employment agreement and in violation of his duty of loyalty to Paradigm.

3.     Krasnow used Paradigm's confidential information, including, but not limited to, his knowledge of Paradigm's internal operating procedures, vendors, contracts and pricing information, to actively compete with Paradigm during and after his employment.  Based on this conduct, Paradigm terminated Krasnow's employment on October 10, 2014.

4.     Paradigm now seeks to enjoin Krasnow from unlawfully competing with Paradigm in violation of his employment agreement and from using and disclosing confidential and proprietary information he obtained while employed by Paradigm.  Paradigm further seeks to preclude Krasnow, ECE, MBL and Allied from profiting from Krasnow's breaches of his duties to Paradigm and to recover damages from the Defendants as well as other relief.

## PARTIES

5.     Paradigm is a New Hampshire Limited Liability Company, with a principal place of business at 155 Lafayette Rd Suite 6 North Hampton, New Hampshire.

6.     Krasnow is an individual residing, upon information and belief, at 1001 Clinton Street in Hoboken, New Jersey.

7.     Accordingly to its registration with the New Jersey Division of Revenue and Enterprise Services, ECE Specialists is a New Jersey Limited Liability Company, with a principal place of business, upon information and belief, in Hoboken, New Jersey.

8.     MBL is a New York Corporation, with a principal place of business at 277 Park Avenue, Suite 4101 in New York, New York.

9.     Allied is an Illinois Corporation, with a principal place of business at 200 West

Adams Street in Chicago, Illinois.

## JURISDICTION AND VENUE

10.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332(a) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11.     At all times relevant to this Verified Complaint, Krasnow lived and worked in New Jersey.  This case arises directly out of Krasnow's activities in New Jersey, including, but not limited to, his efforts on behalf of ECE and other entities to sell products that compete Paradigm's products while he was exclusively employed by Paradigm.

12.     At all times relevant to this Verified Complaint, ECE was a New Jersey Limited Liability Company and conducting business in New Jersey.

13.     At all times relevant to this Verified Complaint, MBL purposefully conducted business in New Jersey in conjunction with Krasnow and ECE.

14.     At all times relevant to this Verified Complaint, Allied conducted business and attempted to sell products in New Jersey/New York through Krasnow, ECE and MBL.

15.     Defendants' minimum contacts with the forum are such that the exercise of jurisdiction with respect to the claims herein comports with traditional notions of fair play and substantial justice.

16.     This district is a proper venue for this action pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## FACTUAL BACKGROUND

### I.    PARADIGM HEALTH PLANS' BUSINESS

17.    Paradigm Health Plans is an industry leader in self-funded health plans.  Founded in 2007 by Dennis LaBrasca, Paradigm is one of the fastest growing, self-funded health plans in the United States.

18.    Paradigm offers clients a broad suite of insurance and self-funded group plan options, including health, dental, vision, short and long term disability, critical illness, accidental death and dismemberment (AD&D) and group life plans.  The company self-insures its business partners, a model that enables plan participants to access a local, regional and national network of physicians and hospitals.

19.    Paradigm also offers a health management plan called Lifestyle for Life™, which provides plan participants with a personal health advocate who provides one-on-one health management guidance.  This approach of providing a suite of industry-leading health advocacy services enables employers to improve employee health outcomes and to keep healthcare costs contained.

20.    Paradigm's fastest growing insurance plans are its Minimum Essential Value plan (the "MEV Plan") and Minimum Essential Coverage plan (the "MEC Plan"), which were specifically designed to comply with the individual mandate and/or employer mandate of the Affordable Care Act (the "ACA").  Congress' passage of the ACA provided a substantial growth opportunity for insurance companies that have ACA-compliant plans, and Paradigm has invested significant time and resources, including a comprehensive regulatory review and actuarial analysis, in order to develop its MEV And MEC Plans.  Paradigm's investment in its ACA-compliant plans and its efforts to market and sell those plans place the company at a competitive

advantage to capitalize on this emerging market.  Information regarding these efforts would be highly valuable to a competitor.

21.     As a plan provider, Paradigm conducts business with clients in one of two ways: (1) through general agents, which in turn work with insurance brokers that represent end-user clients, or (2) directly with insurance brokers that represent end-user clients.  General agents and insurance brokers will commonly solicit health plan proposals from Paradigm in response to inquiries from end-user clients, which are then submitted to the clients for consideration.

22.     Paradigm has invested and continues to invest significant time and resources to develop information, methods and techniques to: (a) identify entities that require insurance product lines; (b) develop and maintain strategic business relationships with clients, vendors and partners throughout the insurance industry; (c) evaluate clients' business and insurance needs; (d) develop and customize insurance products in order to provide best in class coverage for clients at various price points; (e) create comprehensive and complimentary suites of products in conjunction with its vendors and strategic partners for clients; (f) establish appropriate pricing to attract and maintain clients; (g) establish advantageous contractual relationships with vendors, business partners and clients; and (h) analyze emerging healthcare industry issues to ensure regulatory compliance for all product lines.  Krasnow acquired such information, methods and techniques during the course of his employment at Paradigm.

23.     The aforementioned information, processes and methodologies developed by Paradigm, and its relationships with its clients, vendors and partners are core assets of Paradigm's business.

24.     Moreover, the information, processes and methodologies developed by Paradigm described above are valuable, confidential and proprietary to Paradigm and are not readily

available in the public domain.  This information and the goodwill that Paradigm has developed with its clients and business partners has significant economic value to Paradigm and would be of significant economic value to competitors in the insurance industry for a variety of reasons including the following:

    a.    Paradigm specifically developed its suite of products to provide strategic advantages to clients, including minimizing healthcare costs and improving employee health outcomes.  The development of these product lines, which have been market-tested over a number of years, required the investment of significant time and resources.  Knowledge of Paradigm's product lines, contracts, vendor relationships and pricing information would give a competitor an immediate advantage in the rapidly-changing insurance and healthcare industry.

    b.    The relationships and goodwill established by Paradigm with vendors, business partners and clients have been developed over the course of seven years.  Creating a broad, diverse network of strategic partners, including health care providers, PPO networks and plan administrators, requires a significant investment.

    c.    The insurance industry is highly competitive and the development, maintenance and use of nonpublic information relating to products, marketing plans, clients and partners is extremely valuable in gaining a competitive advantage. Paradigm has also invested significant time and monetary resources into studying and analyzing the long-term cost benefits of its various products as compared to competitors' products.  This proprietary information gives Paradigm a competitive advantage in the industry.

    25.    Paradigm also invests a significant amount of time and resources in its employees. Indeed, Paradigm employees receive training on the information, processes and methodologies described above in order to sell and manage specific product lines. Paradigm employees – particularly its sales executives and marketing personnel such as Krasnow – are also entrusted with the management and development of goodwill with clients and strategic business partners. Specifically, employees are given broad access to Paradigm's confidential and proprietary product information and are trained on how to locate and cultivate long-term relationships with clients and prospective clients.

26.     Paradigm's sales executives, including Krasnow, also become inexorably and intimately knowledgeable about Paradigm's clients, methods and techniques for customizing products to meet clients' needs, financial analysis regarding the advantages of Paradigm's product lines, pricing mechanisms for various products, quality control measures and means of maintaining client satisfaction, and other confidential business information that allows Paradigm to enjoy a competitive advantage in the marketplace.

27.     To protect its legitimate business interests with respect to its confidential and proprietary business information, and to comply with regulatory requirements regarding protected health information, Paradigm takes steps to limit access to such information, including password protecting and encrypting information shared within or outside of the company, limiting access to the company network, and requiring passcodes and passwords for all Company devices.

28.     Paradigm also requires employees with access to such information to sign restrictive covenants and confidentiality agreements.  In addition, any of Paradigm's confidential and proprietary business information shared with its business partners and vendors is similarly subject to non-disclosure agreements in order to protect its value in the industry.

**II.     PARADIGM'S RELATIONSHIP WITH ALLIED BENEFIT SYSTEMS**

29.     In or around summer 2012, Paradigm established a business relationship with Allied Benefit Systems, Inc. ("Allied"), an Illinois-based benefit provider.

30.     As an insurance company, Allied sells certain products that are competitive with Paradigm's products, but Allied also provides additional services, such as third-party plan administration, that Paradigm does not offer clients.

31.     In August 2012, Allied and Paradigm entered into a Confidentiality and Non-Disclosure Agreement in order to allow the parties to "engage in discussions in connection with evaluating a business relationship between the parties."  A true and accurate copy of the August 7, 2012 Confidentiality and Non-Disclosure Agreement between Allied and Paradigm is attached hereto at Exhibit A.

32.     Allied's Executive Vice President, Rob Valerious, and LaBrasca engaged in business discussions regarding ways in which Allied and Paradigm could work together strategically in the areas where the companies' products and services did not overlap.

33.     In January 2013, Allied became Paradigm's third-party administrator for a number of Paradigm's benefit plans.  This business relationship continued until approximately May 2014, when Paradigm terminated the relationship and began moving its groups to another third-party administrator.

34.     Amidst concerns regarding the quality of Allied's services, and in light of the fact that Allied had developed and was widely marketing an ACA plan that directly competes with Paradigm's MEV Plan, Paradigm terminated its relationship with Allied.

35.     Based on Allied's efforts at directly competing in the ACA plan market, LaBrasca determined that a strategic business partnership with Allied was no longer in Paradigm's best interest.

36.     Based on this previous relationship, Valerious and Allied are acutely aware of what type of business Paradigm conducts and the fact that Paradigm directly competes with a wide variety of Allied's products and services.

### III.   PARADIGM'S RELATIONSHIP WITH MBL

37.    MBL is an insurance broker and benefits consulting firm whose principals and Senior Benefits Consultants work directly with clients to sell insurance products from companies like Paradigm and Allied, among others.

38.    MBL contacted LaBrasca and other Paradigm employees numerous times beginning in approximately May 2013 seeking to work with Paradigm on proposals for a variety of clients and prospective clients, including, without limitation, TemPositions, President Container, Prestige Industries, Infinity Consulting and The Lobster Place.

39.    While MBL did not ultimately sell any of Paradigm's products, its representatives were in frequent contact with Paradigm to discuss Paradigm's products and price quotes and in order to prepare for meetings with prospective clients.   In addition, along with MBL Vice Presidents Josh Mandell and Jason Lauter, LaBrasca attended a number of meetings in New Jersey for the purpose of selling Paradigm's products through MBL to end-user clients and prospective clients.

40.    In approximately late 2013, while meeting to discuss a prospective client, LaBrasca asked Mandell if he knew Krasnow, who LaBrasca was considering hiring as a Paradigm employee.  Mandell told LaBrasca that MBL had previously tried to hire Krasnow, and he enthusiastically recommended Krasnow for employment at Paradigm and encouraged LaBrasca to offer Krasnow a position.

### IV.   KRASNOW'S EMPLOYMENT WITH PARADIGM

41.    In September 2013, Krasnow was working as a Vice President at Lockton Companies ("Lockton"), an insurance brokerage company and direct competitor of MBL.  In the course of his employment with Lockton, Krasnow began contacting Paradigm through the

company's general agent at that time, FNA Insurance Services, Inc. ("FNA"), seeking proposals for end-user clients on Paradigm's products.  In Fall 2013, Krasnow submitted a number of cases to Paradigm through FNA.

42.     In early 2014, Krasnow began discussions with LaBrasca about potentially working at Paradigm as an in-house sales executive.  Krasnow indicated that he no longer wanted to work for a brokerage firm like Lockton and instead wanted to join a plan provider to focus his efforts on marketing and selling a single suite of products.  At that time, Paradigm did not have an internal employee responsible for sales in New Jersey and, instead, worked through its general agent, FNA, to conduct business with brokers and end-user clients.

43.     In March 2014, after considering the implications of hiring an internal sales executive and speaking with Mandell, LaBrasca decided to offer Krasnow the position of Vice President of Sales and Marketing for Paradigm.  Paradigm was seeking to grow quickly and capitalize on the growing ACA market, and hiring a full-time, in-house salesperson dedicated to the tri-state area was a key component of this growth plan.

44.     Pursuant to an employment offer letter dated March 17, 2014 (the "Offer Letter"), Krasnow accepted the position of Vice President of Sales and Marketing at the Company and became a full-time Paradigm employee responsible for selling Paradigm's products in New York, New Jersey, Connecticut and Pennsylvania (the "Territory").  A true and accurate copy of Krasnow's Offer Letter is attached hereto at Exhibit B.

45.     In accordance with the terms of the Offer Letter, Krasnow received a monthly gross salary of $8,000.00 per month as well as a draw against commission of $10,000 per month, and was eligible for a bonus and other company benefits such as a car allowance, health, dental, life and disability insurance and personal, sick and vacation leave.

46.     As a condition of his employment and receipt of Paradigm's confidential business information and training, Krasnow also executed a Confidentiality and Non-Disclosure Agreement (the "Confidentiality Agreement").   A true and accurate copy of Krasnow's Confidentiality Agreement is attached hereto at Exhibit C.

47.     Pursuant to the Confidentiality Agreement, among other things, Krasnow represented and agreed that:

a.    He would use his best efforts to promote Paradigm's products and services in the Territory. (Exhibit C, at ¶ 3).

b.    He did not represent or promote any products that competed with Paradigm's products at the time of his hire and would not contact or use any of Paradigm's customers in any way except for Paradigm. (Id. at ¶ 5).

c.    During the term of the Agreement and for a period of twenty-four (24) months thereafter, he would not represent, promote or otherwise try to sell within the Territory any lines or products that compete with Paradigm's products. (Id.).

d.    He would not use in any way for his own account or for the benefit of any third party, nor disclose to any third party, any such confidential information revealed to him by Paradigm during the course of his employment. (Id. at ¶ 14).

48.     Krasnow attended a two-day training at Paradigm's New Hampshire in March 2014 and another two-day training in Chicago, Illinois in or around June 2014 with Paradigm's third-party administrator and the Lifestyle For Life Program.   During these trainings, Krasnow received specific training on Paradigm's products, sales and marketing strategies and pricing mechanisms.   At this time and throughout his employment, Krasnow gained firsthand knowledge of Paradigm's client contacts and relationships, pricing information, and proprietary market information.

49.     During his employment with Paradigm as Vice President of Sales & Marketing, Krasnow had a duty to manage client accounts, identify and pursue new client accounts and to

undertake sales activities exclusively on behalf of Paradigm.  His duties also included creating goodwill for Paradigm's exclusive benefit and use.

50.     When Krasnow was hired, LaBrasca planned to obtain office space from which Krasnow could work in the Territory.  LaBrasca researched potential offices, but Krasnow insisted on working from his home in Hoboken, New Jersey.

51.     However, rather than work from a home office, and unbeknownst to Paradigm, Krasnow in fact regularly worked from MBL's offices in New York City and was given a dedicated desk, supplies and administrative support from MBL.

52.     LaBrasca was not aware that Krasnow was working at MBL's offices while he was employed by Paradigm and never would have allowed Krasnow to work from a broker's office had he been aware of the arrangement.  In addition to exposing MBL to Paradigm's confidential business information, this work arrangement would, at a minimum, create a perception of a conflict of interest to industry partners and clients.  Having an insurance plan provider's exclusive sales executive – who solely represents and whose job is to only sell the company's benefit plans – working side-by-side with a broker – who solely represents the end-user client's interests and whose job is to "broker" the best benefit plan solution for these end-users – would necessarily create confusion regarding Krasnow's affiliation with MBL and doubts about his business representation of Paradigm's interests.

53.     During his nearly seven months of employment with Paradigm, Krasnow never sold a single Paradigm product nor did he earn any commissions, despite the fact that he was paid $10,000 per month as a draw against commissions.  Paradigm would later learn that a significant reason Krasnow never earned any commission was because while he was taking the

Company's money, he was simultaneously selling competitive products, including Allied products, to a variety of potential clients.

## V.    PARADIGM'S TERMINATION OF KRASNOW'S EMPLOYMENT

54.    In or around late September 2014, LaBrasca received complaints from other Paradigm employees that Krasnow was not engaged in his work.

55.    These complaints came on the heels of a conversation LaBrasca had with a third-party broker who is not a party to this case who asked LaBrasca if Paradigm sales employees were allowed to sell other companies' products.  Given that Paradigm is not a broker or general agent, allowing an employee to sell competing products would create an inherent conflict of interest and would defeat the purpose of the company employing a dedicated in-house sales arm. Accordingly, LaBrasca responded that Paradigm would not permit such activities.

56.    Based on the complaints and conversation with the broker, LaBrasca undertook an investigation into Krasnow's activities.  Labrasca called the third-party broker and inquired as to why he had asked if Paradigm salespeople were allowed to sell other companies' products.  The broker informed LaBrasca that in or around July 2014, during the National Association of Health Underwriters annual conference, he attended a golf outing.  Several other brokers were at the event, including representatives from MBL, as well as Krasnow.  This broker informed LaBrasca that Krasnow was discussing and marketing Allied's products, which directly compete with Paradigm's products, to a number of third-party brokers at the golf outing.

57.    On October 10, 2014, LaBrasca met with Krasnow at the Courtyard Lyndhurst Meadowlands hotel.  During the meeting, LaBrasca directly confronted Krasnow about selling competitive products while he was employed by Paradigm.  Krasnow denied that he had done so.

58.     Finding Krasnow's denials untruthful, LaBrasca informed Krasnow that his employment with Paradigm was terminated effective immediately and attempted to give Krasnow a termination letter stating the same and detailing Krasnow's post-employment obligations to Paradigm.  Krasnow, however, refused to accept the letter.  A true and accurate copy of Krasnow's termination letter, with a contemporaneous notation from LaBrasca explaining that Krasnow refused to accept it, is attached hereto at Exhibit D.

59.     At the end of the meeting, LaBrasca told Krasnow to return all company property in his possession, which included Paradigm's laptop and iPhone, to Paradigm's Senior Vice President, John Dallo, at Paradigm's Melville office by no later than October 14, 2014. Krasnow, however, failed to return Paradigm's property by October 14, 2014.

60.     On October 15, 2014, Labrasca sent Krasnow a letter demanding the return of all Paradigm property and called him numerous times regarding his refusal to return the company's property.

61.     On October 21, 2014, counsel for Paradigm sent a letter demanding the return of Paradigm's property and any other Company information, documents or files in his possession. The letter also reminded Krasnow of his contractual, statutory and common law obligations not to sell products that compete with Paradigm's products and not to use or disclose any of Paradigm's confidential information.

62.     At the time, Paradigm believed that Krasnow had accepted employment with MBL and was selling competitive products in breach of his Confidentiality Agreement. Accordingly, Joshua Mandell of MBL was copied on this letter, which attached a copy of Krasnow's Confidentiality Agreement.  A true and accurate copy of this October 21, 2014 letter to Krasnow is attached hereto at Exhibit E.

63.     On October 23, 2014, counsel for Krasnow sent a reply letter to Paradigm's counsel, stating that Krasnow would return all Company property, but also, without any explanation (and without any basis), that the Agreement was "null and void."  A true and accurate copy of this October 23, 2014 letter from Krasnow's counsel is attached hereto at Exhibit F.

64.     On October 25, 2014, Paradigm received the company's laptop and iPhone from Krasnow.  These devices were then sent to a digital forensics company for preservation and review.

## VI.     KRASNOW'S COMPETITIVE ACTIVITIES DURING HIS PARADIGM EMPLOYMENT AND MBL'S INVOLVEMENT

65.     The forensic review revealed voluminous documentary evidence, including emails, documents, downloaded files and metadata from a Google Drive account, establishing that Krasnow began working with and on behalf of other entities almost immediately after his employment with Paradigm commenced.  The evidence further shows that Krasnow continued to work against Paradigm's interests in violation of his Confidentiality Agreement even after his employment terminated.

66.     Krasnow's communications were often purposefully deceptive.  For example, a review of Krasnow's computer and his Paradigm email account revealed that Krasnow used a number of email addresses to conduct business that was both outside the scope of his employment duties and directly competitive with Paradigm while he was working exclusively as a Paradigm sales executive.  Krasnow's communications from non-Paradigm email addresses include emails from ecespecialists@gmail.com (with a signature block indicating he is the "Managing Partner"), rossk@exclusivebenefitsolutions.com and rkrasnow432@yahoo.com.

67.     Upon information and belief, Krasnow worked on behalf of a number of his own business entities, including ECE Specialists, LLC, a company registered in his hometown Hoboken, New Jersey, and Exclusive Benefits Solutions, a website Krasnow registered from his apartment in Hoboken, New Jersey using his ECE email address.   Screenshots from these websites are attached hereto at Exhibit G.  A true and accurate copy of the information regarding Exclusive Benefits Solutions' website registration is attached hereto at Exhibit H.

68.     Upon information and belief, during his employment and following the termination thereof, Krasnow worked as a broker and submitted insurance plan proposals on behalf of Allied that directly competed with Paradigm.  Metadata from Krasnow's Paradigm laptop reveals that he accessed numerous Allied proposals in his Google Drive, many of which were in competition with proposals on which he worked on behalf of Paradigm.

69.     At least one Allied proposal for The Lobster Place included Krasnow's Exclusive Benefits Solutions logo, indicating that Krasnow (through Exclusive Benefits Solutions' trade name/entity) was acting as a broker to sell Allied products to The Lobster Place while he was employed by and in direct competition with Paradigm.  Notably, Krasnow had previously worked with Josh Mandell at MBL to submit a plan proposal on behalf of Paradigm to The Lobster Place on behalf of Paradigm, though he was unsuccessful in securing the account.

70.     This duplicitous conduct by Paradigm's Vice President of Sales & Marketing has damaged Paradigm's reputation and goodwill with clients.  At least one prospective client indicated to LaBrasca that he chose not to work with Paradigm because Krasnow submitted two proposals to the client – one with Josh Mandell at MBL on behalf of Paradigm and one with Mandell on behalf of Allied – and the client felt that Krasnow's representation of two competing products while being exclusively employed by Paradigm was highly unethical.

71.     Upon information and belief, as of March 17, 2014, MBL representatives were aware that Krasnow was exclusively employed by Paradigm as one of its sales executives.  That day, Jason Lauter, an MBL Vice President, emailed LaBrasca regarding an opportunity with President Container and inquired if he should "be going through Ross at this point," indicating that MBL was aware of Krasnow's position as a Paradigm sales executive.  Mandell and MBL's Chief Executive Officer, Marc Levy, were copied on the email.  LaBrasca responded that MBL should work with him and Krasnow.  True and accurate copies of these March 17, 2014 email communications are attached hereto at Exhibit I.

72.     Furthermore, in June 2014, Paradigm held two broker seminars – one on Long Island and one in Manhattan – during which the company rolled out a new product line and introduced Krasnow to a large group of insurance brokers as Paradigm's Vice President of Sales & Marketing for New York and New Jersey (among other locations).  MBL representatives, including Mandell and Lauter, were present at the Manhattan meeting.

73.     Notwithstanding the fact that they knew Krasnow was a Paradigm employee, MBL employees engaged in email communications in which Krasnow used his ECE email address and signature block and/or sold or attempted to sell products in conjunction with MBL that compete with Paradigm's products.

74.     The documentation reviewed by Paradigm to date reveals that Krasnow's unlawful activities during his Paradigm employment include the following:

- In April 2014, Krasnow used his ECE email account to correspond with Nancy Melendez of iCahnHouse.org in an effort to provide insurance benefits to the Children's Rescue Fund through MBL and on behalf of other insurance companies, including Aflac and Prudential.  Krasnow instructed Neal Edelson, MBL's Vice President of Business Development, to "start the 5500 process," presumably so that MBL and/or Krasnow's ECE entity could be listed as the brokers of record in the event a sale was commenced.  Krasnow did not even bring this opportunity to Paradigm, nor did he attempt to sell Paradigm's products

to this entity even though the Children's Rescue Fund sought a benefit plan proposal for product lines that Paradigm sells. A true and accurate copy of this April 30, 2014 email communication is attached hereto at <u>Exhibit J</u>.

- In June 2014, Krasnow emailed George Lino of iCahnHouse.org, regarding getting quotes to him from Aflac and Lincoln Financial Group with respect to insurance products from those entities. Again, these entities and their products compete with Paradigm's benefit plan offerings. A true and accurate copy of this June 19, 2014 email communication is attached hereto at <u>Exhibit K</u>.

- In June 2014, Krasnow emailed a representative of Benefitfocus, Inc., a direct competitor of Paradigm, to attempt to sell Benefitfocus' benefits administration products to Villa Enterprises. Krasnow and LaBrasca previously met with Villa Enterprises and worked on a proposal that was submitted on behalf of Paradigm to Villa Enterprises, though Paradigm was ultimately not awarded the business. Krasnow's Google Drive account indicates that he also reviewed and, upon information and belief, submitted a proposal to Villa Enterprises as a broker on behalf of Allied while he was employed by Paradigm.

  - In June 2014, Krasnow emailed with Jim Woehlke, MBL's COO and General Counsel, from his ECE email account. Krasnow's signature block states that he is the "Managing Partner," presumably of ECE. Upon information and belief, Krasnow, through ECE, was operating as a broker to assist MBL in presenting Paradigm benefit plans as well as a number of competitive products.

  - In July 2014, a representative from Paradigm's captive insurance program provider, AIG, sent Krasnow information to his Paradigm email account describing how to establish a captive program, stating that Krasnow "might want to share [the information] with MBL." A true and accurate copy of this July 1, 2014 email communication is attached hereto at <u>Exhibit L</u>. A captive insurance program is a wholly owned subsidiary created to provide insurance to its non-insurance parent company. Captives are essentially a form of self-insurance whereby the insurer is owned wholly by the insured. Upon information and belief, any entity setting up a captive insurance program through or in conjunction with MBL would be directly competing with Paradigm's captive program.

  - In July 2014, Krasnow and Mandell exchanged emails regarding Prestige Corporation, which Krasnow had previously worked with on a proposal that was submitted on behalf of Paradigm. In the email, Krasnow suggests that Mandell and MBL use Advanben's voluntary insurance. Advanben is a direct competitor of Paradigm with a voluntary insurance plan that competes directly with Paradigm's voluntary insurance plan. A true and accurate copy of this July 14, 2014 email communication is attached hereto at <u>Exhibit M</u>.

  - In July 2014, Krasnow emailed with the President of Wellness Plan of America, a direct competitor of Paradigm. Krasnow never discussed this correspondence

with LaBrasca in which he was discussing how to "integrate" with Wellness Plan of America's programs.   A true and accurate copy of this July 28, 2014 email communication is attached hereto at <u>Exhibit N</u>.   Upon information and belief, Krasnow was not communicating with Wellness Plan of America on Paradigm's behalf, but was instead working on behalf of one his own broker businesses.

- In late September and early October 2014, Krasnow accessed a number of Allied insurance proposals in his Google Drive account.  Many of these proposals list clients to which Krasnow had also submitted Paradigm proposals through brokers such as MBL, including EZ Staffing, Villa Enterprises (headquartered in New Jersey), Prestige Corp. (headquartered in New Jersey), TemPositions and Hunter Douglas.  Upon information and belief, Krasnow submitted proposals to these clients on Allied's behalf while he was employed by Paradigm.  Moreover, a number of these proposals are for clients that Krasnow never presented to Paradigm as business opportunities despite the fact that they are located in the Territory and sought benefits plans that Paradigm provides, including Forum Group and Ben Elias Industries.

- On October 9, 2014, the day before Paradigm terminated his employment, Krasnow sent an invitation to Rob Valerious, Allied's President, to meet with Art Grutt, a broker with Cambridge Insurance Advisors, regarding a prospective client on October 13, 2014.   On October 13, 2014, Valerious, Krasnow and Grutt corresponded following up on their meeting.  True and accurate copies of these email communications are attached hereto at <u>Exhibit O</u>.

- On October 13, 2014, Jim Essey of TemPositions forwarded an email to Labrasca that shows that Valerious and Krasnow (using his ECE email account) solicited TemPositions' business on behalf of Allied.  Krasnow had previously worked with Josh Mandell of MBL to submit a Paradigm proposal to TemPositions.  This correspondence occurred just one business day after Paradigm terminated Krasnow's employment.  Upon information and belief, Krasnow worked as a broker and solicited TemPositions' business on Allied's behalf before the termination of his employment with Paradigm and continues to attempt to sell this client and others products that compete with Paradigm in direct violation of his contractual obligations. A true and accurate copy of this July 28, 2014 email communication is attached hereto at <u>Exhibit P</u>.

- On October 15, 2014, Krasnow accessed an Allied proposal on his Google Drive for The Lobster Place, which included the logo for Exclusive Benefits Solutions, a website Krasnow registered using his ECE email account.  A copy of metadata recovered from Krasnow's Google Drive access on his Paradigm laptop, which shows a snapshot of this Exclusive Benefits Solutions/Allied proposal, is attached hereto at <u>Exhibit Q</u>.

- On November 25, 2014, Jason Lauter at MBL sent an email to Krasnow's Paradigm email account, which included Allied enrollment packets for a proposal

19

that Krasnow submitted to MaxSent through MBL.  Allied's product is directly competitive with Paradigm's product offerings.  Upon information and belief, Krasnow and MBL began working together on the MaxSent account several weeks before this email, which states that Allied would be receiving a deposit check "next week."  A true and accurate copy of this November 25, 2014 email communication is attached hereto at Exhibit R.  Information regarding Allied's pricing for this proposal, which is attached to the email communication, has been redacted.

75. Krasnow's email correspondence demonstrates that he is currently breaching the terms of his Confidentiality Agreement by selling products within the Territory that compete with Paradigm's products, including Allied's products, in conjunction with MBL and through his ECE entity and Exclusive Benefits Solutions website.

76. Upon information and belief, MBL and Krasnow and ECE colluded to use Krasnow's employment at Paradigm to gain access to Paradigm's confidential and proprietary information in order to more effectively sell products from Allied and other Paradigm competitors.

77. Upon information and belief, MBL sought information from Krasnow regarding Paradigm's product lines, including its captive program, so that it could package a suite of benefits that directly competes with Paradigm's plan offerings.

78. Krasnow's knowledge concerning, among other things, Paradigm's pricing, vendors, clients, marketing strategies, product formation and other confidential information would be valuable to his companies and to MBL in selling competitor products, including those of Allied.

79. Krasnow's relationships with and confidential information regarding Paradigm's clients permits him, his companies and MBL to target Paradigm's clients and prospective clients to sell competing products.

80.     Since at least October 22, 2014, MBL has been aware of the terms and conditions of Krasnow's Confidentiality Agreement and the restrictive covenants contained therein based on Vice President Josh Mandell's receipt of a letter from Paradigm's counsel.  Even so, upon information and belief, MBL purposefully and maliciously continues to conduct business with Krasnow on behalf of Allied.

81.     Upon information and belief, Allied was aware that Krasnow was exclusively employed by Paradigm, as evidenced by email correspondence between Krasnow's Paradigm email account and Rob Valerious at Allied, and continued to work with him to sell Allied's competitive products despite this knowledge.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (Against Krasnow)

82.     Paradigm incorporates and realleges paragraphs 1 through 81 of the Verified Complaint as if set forth here in full.

83.     Paradigm has a valid and enforceable Confidentiality Agreement with Krasnow. This Agreement contains provisions prohibiting the use or disclosure of Paradigm's confidential information and trade secrets and prohibiting Krasnow's sale of products that compete with Paradigm's products both during his employment at Paradigm and for a period of twenty-four (24) months thereafter.

84.     Paradigm has fully performed its obligations under the Confidentiality Agreement, and all conditions precedent for the enforcement of the Confidentiality Agreement have been satisfied.

85.     Krasnow has breached the non-competition and non-disclosure provisions of his Confidentiality Agreement and his obligation not to engage in conflicting business activity during his employment with Paradigm by actively collaborating with MBL to sell products that compete with Paradigm's products within the Territory.

86.     As a result of such breach, Paradigm has been and will continue to be severely damaged in an amount to be determined at trial.

87.     Krasnow agreed to indemnify Paradigm from all damages, including reasonable attorneys' fees, arising out of his negligence or malfeasance.  Accordingly, Paradigm is entitled to damages for Krasnow's breach of the Confidentiality Agreement as well as its reasonable attorneys' fees incurred in order to enforce the terms of the Confidentiality Agreement.

88.     Unless restrained by this Court, Krasnow will continue his unlawful actions and Paradigm will continue to be irreparably harmed.

89.     Paradigm will not have an adequate remedy at law for the harm and damage that Krasnow's breach of his Confidentiality Agreement will cause.  Paradigm is therefore entitled to a temporary restraining order and preliminary and permanent injunction, enjoining Krasnow from further breaching his Confidentiality Agreement.

**COUNT II**
**MISAPPROPRIATION OF PARADIGM'S TRADE SECRETS,**
**PROPRIETARY INFORMATION AND CONFIDENTIAL INFORMATION**
**(Against Krasnow, ECE and MBL)**

90.     Paradigm incorporates and realleges paragraphs 1 through 89 of the Verified Complaint as if set forth here in full.

91.     During his employment with Paradigm, Krasnow had access to, acquired and used certain of Paradigm's trade secrets and proprietary and/or confidential information.  This information is economically valuable, is not generally known to the public and is not readily

ascertainable by proper means by other persons.   Furthermore, Paradigm has expended substantial time, money and effort in developing such information for business use and to obtain a competitive advantage.

92.     Paradigm engaged in reasonable efforts to maintain the confidentiality of this information.   For example, Paradigm password protects its network and limits access to confidential documents, files and information.   Furthermore, Paradigm required Krasnow and other employees to sign the Confidentiality Agreement containing confidentiality and non-disclosure obligations.   Likewise, vendors and business partners, such as Allied, that could have access to Paradigm's confidential information were and are required to sign non-disclosure and confidentiality agreements.

93.     Accordingly, the various items of information described above constitute trade secrets within the meaning of the New Jersey Trade Secrets Act, N.J. Stat. Ann. §§ 56:15-1, *et seq*.

94.     By their actions, including those described above, Krasnow, ECE and MBL have misappropriated certain of Paradigm's trade secrets, proprietary and/or confidential information.

95.     The disclosure, use and/or distribution of such information by Krasnow, ECE and MBL constitutes an unauthorized disclosure or use of Paradigm's trade secrets and proprietary and/or confidential information in violation of the common law and N.J. Stat. Ann. §§ 56:15-1 – 56:15-4.

96.     As a result of Krasnow's, ECE's and MBL's conduct, Paradigm has suffered and will continue to suffer damages, including, but not limited to, loss of competitive advantage, reduction of the value of the confidential information and trade secrets, loss of the exclusive use of the confidential information and trade secrets and loss of potential profits.

97.     Krasnow's, ECE's and MBL's conduct as described herein was willful and malicious and entitles Paradigm to attorneys' fees and punitive damages.

98.     The recovery of money damages for Krasnow's, ECE's and MBL's actions and misappropriation would not fully compensate Paradigm.   Accordingly, pursuant to N.J. Stat. Ann. § 56-15-3, this Court may temporarily restrain and preliminarily and permanently enjoin Defendants from any further misappropriation or use of Paradigm's trade secrets and proprietary and/or confidential information.

## COUNT III
### TORTIOUS INTERFERENCE WITH CONTRACT
### (Against MBL)

99.     Paradigm incorporates and realleges paragraphs 1 through 98 of the Verified Complaint as if set forth here in full.

100.    Paradigm has a valid and enforceable Confidentiality Agreement with Krasnow. This Agreement contains provisions prohibiting the use or disclosure of Paradigm's confidential information and trade secrets, and prohibiting Krasnow's sale of non-Paradigm products in the Territory both during his employment at Paradigm and for a period of 24 months thereafter.

101.    MBL is on notice of the Confidentiality Agreement by virtue of Paradigm's counsel's correspondence to MBL on October 21, 2014.

102.    Upon information and belief, MBL has tortiously interfered with the Confidentiality Agreement by working with Krasnow to sell products that compete with Paradigm's products within the Territory.

103.    MBL interfered with the Confidentiality Agreement intentionally, with malice, and without justification.

104.    As a direct result of MBL's unlawful conduct, Paradigm has been deprived of its existing and reasonable expectation of obtaining the benefits and protections from the Confidentiality Agreement.

105.    Paradigm has been and will continue to be severely damaged by MBL's conduct in an amount to be determined at trial.

## COUNT IV
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Against All Defendants)

106.    Paradigm incorporates and realleges paragraphs 1 through 105 the Verified Complaint as if set forth here in full.

107.    Paradigm hired Krasnow as a full-time, in-house sales executive to exclusively sell Paradigm's products within the Territory.  In the course of his duties as Paradigm's Vice President of Sales and Marketing, Krasnow worked with MBL and other brokers to submit a number of proposals to prospective clients on behalf of Paradigm.  Accordingly, Paradigm had a reasonable expectation that Krasnow's work would result in an economic advantage.

108.    Upon information and belief, Krasnow and ECE worked with MBL to sell competing products of Allied and other Paradigm competitors during the course of his employment.  Krasnow did not sell a single Paradigm product in his seven months of employment with the company.

109.    Defendants interfered with Paradigm's business intentionally, with malice, and without justification by working with Krasnow, whom all parties understood to be a captive employee of Paradigm, to divert away business from Paradigm to Allied and other competitors.

110.   Paradigm had a reasonable probability of obtaining an economic benefit if Krasnow had exclusively sold its products and not directly competed with Paradigm during his employment.

111.   Paradigm has been and will continue to be severely damaged by Defendants' conduct in an amount to be determined at trial.

**COUNT V**
**BREACH OF DUTY OF LOYALTY**
**(Against Krasnow)**

112.   Paradigm incorporates and realleges paragraphs 1 through 111 of this Verified Complaint as if set forth here in full.

113.   At all times relevant hereto, Krasnow was an employee of Paradigm.

114.   As a senior executive, Krasnow was in a position of trust and confidence with Paradigm and owed Paradigm a fiduciary duty.

115.   As Vice President of Sales & Marketing, Krasnow had a duty to exclusively sell Paradigm's products within his Territory and not to compete directly with Paradigm's business interests.

116.   By selling Allied's and other competitors products during his employment with Paradigm on behalf of ECE and in conjunction with MBL and diverting business away from Paradigm, Krasnow breached his duty of loyalty owed to Paradigm.

117.   As a direct and proximate result of Krasnow's acts, Paradigm has suffered, and continues to suffer, substantial damages and MBL, ECE and Allied have all unlawfully profited.

118.   Paradigm has been and will continue to be severely damaged by Krasnow's breach of the duty of loyalty in an amount to be determined at trial.

## COUNT VI
## UNJUST ENRICHMENT/RESTITUTION
### (Against All Defendants)

119.    Paradigm incorporates and realleges paragraphs 1 through 118 of this Verified Complaint as if set forth here in full.

120.    Paradigm paid Krasnow for his full and exclusive employment services, while Krasnow was simultaneously working on behalf of and/or in conjunction with ECE, MBL and Allied throughout the course of his employment.

121.    Krasnow was unjustly enriched by receiving his base salary and a draw against commissions when he was not working for Paradigm and, in fact, was engaging in directly competitive activities despite being exclusively employed by Paradigm.

122.    Upon information and belief, ECE, MBL and Allied were unjustly enriched by receiving monies from clients to which Krasnow should have sold exclusively Paradigm's products.   As a result of Defendants' scheme, Defendants reaped illicit profits.

123.    Upon information and belief, ECE, MBL and Allied have retained these profits despite their knowledge that the profits arose from unlawful means.

124.    The unjust and inequitable retention of these benefits by Defendants derived from their unlawful arrangement with Krasnow during his employment with Paradigm violates the principles of justice and equity.

## ALTERNATIVE REFORMATION

125.    In the event that the Court should find any part of the restrictions requested above to be too broad to be enforced, or otherwise enforceable, Paradigm requests that said restriction(s) be reformed by the Court so as to make the restriction(s) enforceable to the maximum extent allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Walker Winslow Group, LLC d/b/a Paradigm Health Plans pray for judgment against Defendants granting the following relief:

1.  Award Paradigm actual and compensatory damages in an amount in excess of $75,000.00 as will be proven at trial;

2.  Award Paradigm punitive damages in an amount to be determined pursuant to N.J. Stat. Ann. § 56:15-6;

3.  Award Paradigm its costs and reasonable attorneys' fees incurred in prosecuting this action pursuant to N.J. Stat. Ann. § 56:15-6 and the parties' underlying contractual agreement;

4.  Order that Defendants return to Paradigm all of Paradigm's confidential and proprietary business information in his, its or their possession, custody or control, in any form such information exists, whether written, printed, electronic or in digital format or otherwise;

5.  Temporarily, preliminarily and permanently restrain and enjoin Krasnow from the following:

    a.  through October 10, 2016, directly or indirectly representing, marketing, promoting, selling or attempting to represent, market, promote or sell any lines or products that compete with Paradigm's products and product lines within the Territory;

    b.  through October 10, 2016, soliciting, diverting, appropriating or attempting to solicit, divert or appropriate any customers or prospective customers for the purpose of selling any lines or products that compete with Paradigm's

Products;

c.   through October 10, 2016, working for, with or on behalf of any person or entity that represents, markets, promotes or sells any lines or products that compete with Paradigm's products  or lines of products within the Territory; and/or

d.   otherwise interfere with any contract and/or any existing or prospective advantageous business relationship of Paradigm.

6.   Grant Paradigm such other and further relief that the Court deems just and proper.

Respectfully Submitted,

**WALKER WINSLOW GROUP, LLC
d/b/a PARADIGM HEALTH PLANS,**

By its attorneys,

James M. Nicholas (*Pro Hac Vice to be submitted*)
Jillian M. Collins (*Pro Hac Vice to be submitted*)
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C
One Financial Center
Boston, MA  02111
(617) 542-6000

Scott A. Rader, Esq.
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C
The Chrysler Center
666 Third Avenue, 25th Floor
New York, New York 10017
Phone: (212) 935-3000

Date: December 15, 2014

## VERIFICATION

I, Dennis LaBrasca, hereby certify that I am the President & CEO of Walker Winslow Group LLC d/b/a Paradigm Health Plans.  I have read the foregoing Verified Complaint and know its contents.  The Statement of Facts in the Verified Complaint are true to my knowledge, except as to any matters alleged on information and belief, and as to those matters I believe them, in good faith, to be true.

Dennis LaBrasca

DATE:_____
.